**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**AMMP, a minor, by his parents, and next
friends, SHAMIA L. SMITH and
ANTHONY PIERCE and
SHAMIA L. SMITH, individually, and
ANTHONY PIERCE, individually,**                                   **PLAINTIFFS**

      v.                                                                    CAUSE No.: 3:20-cv-475-HTW-LRA

**UNITED STATES OF AMERICA and
ROBERT W. NAEF, III, M.D. and
MISSISSIPPI MATERNAL-FETAL MEDICINE, P.A.,**             **DEFENDANTS**

**COMPLAINT
(Jury Trial Demanded)[1]**

COMES NOW Plaintiffs, AMMP, a minor, acting by and through his parents and next friends, Shamia L. Smith and Anthony Pierce, and Shamia L. Smith individually, and Anthony Pierce, individually, and file their Complaint against the United States of America, Robert W. Naef, III, M.D., and Mississippi Maternal-Fetal Medicine, P.A. for negligence and other causes of action, and in support thereof would show the Court as follows:

**JURISDICTION, VENUE AND LIMITATIONS**

      1.       This action against the United States of America ("United States") is brought pursuant to Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq*. for money damages arising from personal injury, and this Honorable Court is vested with subject matter jurisdiction over the United States under 28 U.S.C. §1346(b).

      2.       Subject matter jurisdiction over the claims against Defendants Robert W. Naef, III, M.D. and Mississippi Maternal-Fetal Medicine, P.A. is asserted under 28 U.S.C. §

---

[1] With respect to the claims against Defendants Robert W. Naef, III, M.D. and Mississippi Maternal-Fetal Medicine, P.A., the Plaintiffs respectfully demand a trial by jury.

1367 because those claims are so related to claims against the United States pursuant to 28 U.S.C. §1346(b) that they form part of the same case or controversy under Article III of the United States Constitution.

3. Personal jurisdiction exists over all Defendants because they transact business in the State of Mississippi, caused tortious injury in the course of doing business in the State of Mississippi, and are located in the State of Mississippi, specifically, in the Northern Division of the United States District Court for the Southern District of Mississippi.

4. Pursuant to the requirements of the Federal Tort Claims Act, on December 18, 2019, Plaintiffs properly and timely served their written Claims for Damage, Injury or Death (Form 95) on the United States Department of Health and Human Services.

5. Six months have elapsed following service of the Administrative Claims and the United States neither accepted nor rejected the Claims; thus, pursuant to 28 U.S.C. § 2675(a) Plaintiffs consider the United States' failure to accept or reject their Claims as a final denial of their Claims.

6. On December 12, 2019, Plaintiffs served a timely and proper notice of intention to bring an action on Defendants Robert W. Naef, III, M.D. and Mississippi Maternal-Fetal Medicine, P.A., pursuant to Miss. Code Ann. § 15-1-36.

7. Over 60 days have expired since Defendants Robert W. Naef, III, M.D., and Mississippi Maternal-Fetal Medicine, P.A. received Plaintiffs' notices of intention to bring an action.

8. Plaintiffs have complied with Miss. Code Ann. § 11-1-58 and have consulted with a qualified medical expert. The certification of John W. Kitchens is attached hereto as Exhibit A.

9. Accordingly, Plaintiffs exhausted all their administrative remedies and all conditions precedent to filing this action against the United States under Federal Tort Claims Act and against Robert W. Naef, III, M.D. and Mississippi Maternal-Fetal Medicine, P.A. under Mississippi law.

10. Venue is properly within this District under 28 U.S.C. § 1402(b) because Plaintiffs reside in Jackson, Hinds County, Mississippi, in the Northern Division of the Southern District of Mississippi and the acts complained of occurred in Jackson, Hinds County, Mississippi.

11. This suit has been filed against the United States within the time limitations established under 28 U.S.C. § 2401(b).

12. This suit has been filed against Robert W. Naef, III, M.D. and Mississippi Maternal-Fetal Medicine, P.A. within the time limits established under Mississippi law.

## THE PARTIES

13. The minor Plaintiff, AMMP, lives with his natural parents Shamia L. Smith and Anthony Pierce at 3171 Bilgray Drive, Jackson, Mississippi.

14. The Defendant, the United States, acted by and through the Central Mississippi Civic Improvement Association, Inc. d/b/a Jackson-Hinds Comprehensive Health Center ("Jackson-Hinds"), a Program grantee under 42 U.S.C. § 254(b) and a deemed Public Health Service employee pursuant to 42 U.S.C. § 233(g)-(n). JHCHC is located in Jackson, Mississippi.

15. Service of process for the United States shall be made on both: 1) Attorney General of the United States of America, United States Department of Justice, 950 Pennsylvania Avenue, NW, Washington, D.C. 20530; and, 2) The Honorable D. Michael Hurst,

Jr., United States Attorney for the Southern District of Mississippi, U.S. Attorney's Office, 501 East Court Street, Suite 4.430, Jackson, Mississippi 39201.

16. Jackson-Hinds, at all times pertinent to this action, held itself out to the public, including Plaintiffs, as being a competent and qualified provider of obstetrical health care, acting through its agents, servants and employees, including but not limited to, Samuel Brown, M.D., Paul Rice, M.D., and Nobel Attipoe, M.D.

17. Pursuant to federal law, the employees of Jackson-Hinds, including Samuel Brown, M.D., Paul Rice, M.D., and Nobel Attipoe, M.D., are also deemed Public Health Service employees of the United States.

18. At all times pertinent to this action, Samuel Brown, M.D., Paul Rice, M.D., and Nobel Attipoe, M.D., were licensed physicians in the State of Mississippi holding themselves out to the public, including Plaintiffs, as being physician specialists in obstetrics/gynecology, trained, able, competent and qualified to provide safe and proper medical care and treatment to pregnant patients.

19. At all relevant times, Samuel Brown, M.D., Paul Rice, M.D., and Nobel Attipoe, M.D. provided obstetrical care to Plaintiff Shamia L. Smith and her then unborn baby, AMMP at Jackson-Hinds and/or Merit Health Central Hospital, in Jackson, Mississippi.

20. Samuel Brown, M.D., Paul Rice, M.D., and Nobel Attipoe, M.D. at all times herein acted within the course and scope of their employment for the United States government.

21. Defendant, Robert W. Naef, III, M.D., is and at all times pertinent to this action was a licensed physician in the State of Mississippi holding himself out to the public, including Plaintiffs, as being a physician specialist in maternal-fetal medicine, trained, able,

4

competent and qualified to provide safe and proper medical care and treatment to his patients. The professional office of Robert W. Naef, III, M.D. is located at 501 Marshall St., Suite 601, Jackson, Mississippi 39202.

22.     Defendant Robert W. Naef, III, M.D. may be served with Process at his office: Mississippi Maternal-Fetal Medicine, P.A., 501 Marshall St., Suite 601, Jackson, Mississippi 39202.

23.     Defendant, Mississippi Maternal-Fetal Medicine, P.A., ("MMFM") was and is a duly registered business in the State of Mississippi that at all times pertinent held itself out to the public, including Plaintiffs, as being a competent and qualified provider of maternal-fetal medicine care through its agents, servants and employees, including Defendant Dr. Naef. MMFM is located at 501 Marshall St., Suite 601, Jackson, Mississippi 39202.

24.     Service of Process on Defendant MMFM can be made on its Resident Agent, Eddie J. Abdeen, Esquire, 115 Homestead Drive, Madison, Mississippi 39130.

25.     Defendant, Robert W. Naef, III, M.D., at all times pertinent hereto acted as the actual and/or apparent agent, servant and/or employee of Defendant, Mississippi Maternal-Fetal Medicine, P.A., and did so within the scope of his agency and/or employment.

## FACTS OF THE CASE

26.     Shamia L. Smith was 29 years old and pregnant with her third child in January of 2018.

27.     During her pregnancy, she received regular prenatal care from obstetrician Dr. Samuel Brown, at Central Mississippi Civic Improvement Association, Inc. d/b/a Jackson-Hinds Comprehensive Health Center (hereinafter sometimes referred to as "Jackson-Hinds"). She also received prenatal care from Dr. Paul Rice at Jackson-Hinds.

28. Ms. Smith's prenatal course was complicated by a diagnosis of insulin-dependent gestational diabetes, leading to her referral for specialized follow-up by a maternal-fetal medicine physician, Dr. Robert Naef, who in October 2017 began performing serial fetal ultrasounds to assess interval fetal growth and well-being.

29. A November 30, 2017, ultrasound report documented a baby of 3038 grams, who had experienced "excessive interval fetal growth" to the 85% percentile.

30. An ultrasound taken on December 20, 2017, nearly two weeks prior to the child's delivery, revealed that the fetus had grown to greater than the 95% percentile for gestational age, 9 lbs. 15 oz. (4519 grams).

31. A fetal weight of 4500 grams by ultrasound is the threshold used on patients with gestational diabetes for diagnosing macrosomia, a known risk factor for maternal and fetal complications including shoulder dystocia, the very condition Ms. Smith and her baby ultimately experienced, wherein after the baby's head is delivered the infant's shoulder becomes caught on the pubic symphysis, thus preventing full delivery of the child.

32. Guidelines issued by the American College of Obstetricians and Gynecologists ("ACOG") to OB/GYN clinicians such as Dr. Naef, Dr. Brown, Dr. Rice, and Dr. Attipoe utilize the 4500 gram threshold as the point at which clinicians should counsel their patients who have gestational diabetes regarding the risks of a vaginal birth (including shoulder dystocia and its sequelae) and benefits of a cesarean delivery.

33. Indeed, it is the standard of care to inform patients with gestational diabetes and a fetal weight of 4500 grams or more regarding the risks of a vaginal birth (including shoulder dystocia and its sequelae) and the advisability of a cesarean delivery.

34. On December 20, 2017, Dr. Naef interpreted Ms. Smith's ultrasound and

advised her concerning maintenance of good glucose levels, Dr. Rice examined Ms. Smith at Jackson-Hinds and informed her she was doing well, and Dr. Brown managed an outpatient observation of Ms. Smith at Merit Health Central.

35. Dr. Brown and Dr. Rice, as obstetricians providing prenatal care to Ms. Smith, had the duty to obtain and review the December 20, 2017, ultrasound promptly.

36. Furthermore, Dr. Brown and Dr. Rice, had the obligation under the standard of care to counsel their patient, Shamia Smith, as to the risks of proceeding with a vaginal delivery under such circumstances and promptly arrange for cesarean section delivery, but failed to do so.

37. As the maternal-fetal medicine specialist responsible for performing and interpreting the ultrasounds, Dr. Naef had the obligation under the standard of care to counsel his patient, Shamia Smith, as to the risks of proceeding with a vaginal delivery under such circumstances and promptly arrange for cesarean section delivery, but failed to do so.

38. On January 2, 2018, Ms. Smith presented to Central Mississippi Labor and Delivery at Merit Health Central experiencing spontaneous labor. She was 39 1/7 weeks gestation.

39. Dr. Nobel Attipoe was the on call OB/GYN and attended to Ms. Smith. Thus, he had the duty to provide her and her then unborn child with appropriate care and a safe delivery.

40. Under the standard of care, Dr. Attipoe was obligated to review his patient's prenatal records, including the ultrasounds, and then counsel his patient regarding the risks of proceeding with vaginal birth given her large for gestational age fetus, and recommend and arrange for a cesarean section. He failed to do this.

41. Following the December 20th ultrasound showing her baby was over the 4500 gram threshold for macrosomia, had Plaintiff been advised by Dr. Naef, Dr. Brown, Dr. Rice or Dr. Attipoe that her child was very large and that delivery via cesarean section was a viable and advisable option under the circumstances, she, like any reasonable patient under similar conditions, would have agreed to a caesarian delivery.

42. Instead, and in violation of the standard of care, the medical records document that Dr. Attipoe ordered that Ms. Smith be started on Pitocin, a drug administered to induce and augment labor contractions for a vaginal delivery.

43. Subsequently and predictably, Dr. Attipoe was confronted with shoulder dystocia.

44. Dr. Attipoe had to apply traction to deliver the nearly 12 lbs (5425 grams) baby out of the womb. Due to the shoulder dystocia and traction, the cluster of nerves that exit the neck from the spinal cord (the brachial plexus) were damaged resulting in paralysis of AMMP's right shoulder and part of his arm.

45. AMMP was depressed at birth with no respiratory effort and decreased heart rate requiring resuscitation. His Apgar scores (a zero to ten measure of wellbeing at birth) were 1 at 1 minute, 4 at 5 minutes and still only 5 at 10 minutes.

46. He was transferred to the NICU and his parents were advised to seek follow-up care from a pediatric neurologist. AMMP has been seen by pediatric neurologists since approximately six (6) weeks of age. He receives ongoing care.

47. Had Dr. Brown, Dr. Naef and Dr. Attipoe each recognized the significance of the prenatal ultrasound estimates of a fetal weight over 4500 grams, as required by the standard of care, and then followed the standard of care under the circumstances, and/or had they

obtained a proper informed consent, AMMP would have been delivered safely by cesarean section and avoided his brachial plexus injuries.

48. As a direct and proximate result of the Defendants' negligence, AMMP sustained severe and permanent injury to his right arm and shoulder. Abnormal EMG/nerve conduction studies conducted in June 2018 demonstrate "severe, axonal brachial plexopathy involving upper and middle trunks."

49. At approximately six (6) weeks of age AMMP was evaluated by occupational therapy and began treatment shortly thereafter, treatment that continued for several months. The neurology records indicate AMMP experienced initial improvement in his arm with occupational therapy, but by one (1) year of age had plateaued and the neurosurgeon advised that surgery be performed as soon as possible, and prior to age two (2), for better chance of better recovery.

50. On January 23, 2019, AMMP underwent right brachial plexus exploration with external neurolysis procedure. The recorded findings include, "EMG signals within the deltoid, supraspinatus and infraspinatus were present, but reduced." Scarring of the upper trunk was also noted. At a February 2019 postoperative checkup, AMMP's right arm movement was noted to be comparable to before surgery and physical therapy was prescribed.

51. Thus, as a direct and proximate result of Defendants' negligence, AMMP has endured and will continue to endure significant motor dysfunction, pain, suffering, mental anguish, discomfort, disfigurement, diminished enjoyment and quality of life, as well as, diminished earning capacity. He will incur future costs of medical care, surgeries, therapies, and adaptive and assistive equipment.

52. As a further direct and proximate result of Defendants' negligence,

AMMP's parents have incurred and will incur in the future, until AMMP reaches the age of majority, the costs for their son's extraordinary medical care, therapies, and adaptive and assistive equipment.

### COUNT ONE – NEGLIGENCE

53. Plaintiffs incorporate by reference herein all of the facts and allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

54. In their care and treatment of their patients, Shamia L. Smith and her son, AMMP, Defendants, directly and/or through their respective (actual, apparent and deemed) agents, servants and employees, owed a duty to possess and exercise that degree of care, diligence and skill as is ordinarily possessed and exercised by other minimally competent and reasonably diligent, skillful, careful and prudent practitioners in their specialty practicing throughout the United States.

55. Defendants, directly and/or through their respective (actual, apparent and deemed) agents, servants and employees, further owed to Shamia L. Smith and her son, AMMP, a duty to exercise that degree of care of a reasonably prudent person.

56. Defendant, the United States of America, acting through its deemed employees and agents, including but not limited to Samuel Brown, M.D., Paul Rice, M.D. and Nobel Attipoe, M.D., violated that duty and was negligent in the following ways, among others:

   A. Failing to recognize the significance of the prenatal ultrasound showing a fetal weight of over 4500 grams in a patient with gestational diabetes;

   B. Failing to implement a proper delivery plan in light of the December 20th ultrasound showing a fetal weight of over 4500 grams in a patient with gestational diabetes;

    C. Failing to communicate to the patient the significance of the prenatal ultrasound estimates of a fetal weight over 4500 grams in a patient with gestational diabetes and the risks of a vaginal delivery under the circumstances;

    D. Failing to recommend to the patient that she undergo a caesarian section delivery of her baby;

    E. Failing to obtain the December 20th ultrasound results in a prompt manner;

    F. Failing to review the December 20th ultrasound results in a prompt manner; and,

    G. Otherwise failing to use due care and manage the pregnancy and the minor Plaintiff's condition in an appropriate manner.

  57. Defendant, the United States of America, is legally responsible under the legal doctrine of *respondeat superior* for the acts and omissions of its actual, deemed and apparent agents, servants and employees, including but not limited to Samuel Brown, M.D., Paul Rice, M.D. and Nobel Attipoe, M.D.

  58. Defendant Robert W. Naef, III, M.D. violated that duty and was negligent in the following ways, among others:

    A. Failing to recognize the significance of the prenatal ultrasound showing a fetal weight of over 4500 grams in a patient with gestational diabetes;

    B. Failing to communicate to the patient the significance of the prenatal ultrasound estimates of a fetal weight of over 4500 grams in a patient with gestational diabetes and the risks of a vaginal delivery under the circumstances;

    C. Failing to recommend to the patient that she undergo a caesarian

11

section delivery of her baby;

        D.        Failing to assure that the December 20th ultrasound results showing a fetus in excess of 4500 grams in a patient with gestational diabetes were promptly communicated to the patient's obstetricians;

        E.        Failing to assure that the significance of the ultrasound showing a fetus in excess of 4500 grams in a patient with gestational diabetes was impressed upon the patient's obstetricians; and,

        F.        Otherwise failing to adhere to the standard of care.

59. Defendant Mississippi Maternal-Fetal Medicine, P.A. is legally responsible under the legal doctrine of *respondeat superior* for the acts and omissions of its actual and/or apparent agents, servants and employees, including but not limited to Robert W. Naef, III, M.D.

60. The aforesaid negligence of the Defendants, jointly and severally, directly and proximately caused the minor Plaintiff, AMMP, to sustain severe, painful, permanent and disabling injuries, including, but not limited to:

        A.        Severe and permanent nerve damage injury;

        B.        Motor dysfunction;

        C.        Past, present and future pain and suffering and emotional distress;

        D.        Disfigurement and inconvenience;

        E.        Diminished enjoyment and quality of life; and,

        F.        Loss of earnings/diminished earning capacity.

61. As a further direct and proximate result of the aforesaid negligence of the Defendants, AMMP has required and will continue to require substantial surgical, medical,

nursing, and related care; various types of therapies such as physical, occupational, rehabilitative, and pharmaceutical; and other care including specialized devices, equipment, transportation and housing, for which significant sums of money have been and will continue to be expended, in the past, present and future.

## PRAYER FOR RELIEF

WHEREFORE PREMISES COSIDERED, Plaintiff AMMP, a minor, acting by and through his parents and next friends, Shamia L. Smith and Anthony Pierce, respectfully demands that judgment be entered in favor of the Plaintiff and against the Defendants, jointly and severally, for all actual, compensatory and consequential damages to which Plaintiff is entitled. Plaintiff further prays that he be awarded pre-judgment interest and post-judgment interest; fees and costs, including attorney's fees; and, such other general relief to which he is entitled.

## COUNT II – NEGLIGENCE

62. Plaintiffs, Shamia L. Smith and Anthony Pierce, individually, incorporate by reference herein all of the facts and allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

63. As a direct and proximate result of the aforesaid negligence of the Defendants, Plaintiffs Shamia L. Smith and Anthony Pierce, as parents of the minor Plaintiff, have expended and will continue to expend large sums of money for their child's surgical, medical and hospital care, treatment, nursing, therapy, rehabilitative care, custodial and other care and related services, in addition to having suffered pecuniary loss and expending great time and effort to attend to their son's injuries.

64. As a further direct and proximate result of the Defendants' aforesaid

negligence, Plaintiffs Shamia L. Smith and Anthony Pierce have suffered and will continue to suffer great mental anguish in connection with rearing their permanently injured child and suffered a loss of their son's care, comfort, services and consortium in the past and will continue to suffer said losses in the future.

## PRAYER FOR RELIEF

WHEREFORE PREMISES COSIDERED, Plaintiffs, Shamia L. Smith and Anthony Pierce, individually, demand respectfully that judgment be entered in favor of the Plaintiffs and against the Defendants, jointly and severally, for all actual, compensatory and consequential damages to which Plaintiffs are entitled. Plaintiffs further pray that they be awarded pre-judgment interest and post-judgment interest; fees and costs, including attorney's fees; and, such other general relief to which they are entitled.

> AMMP, a minor, acting by and through his parents and next friends, Shamia L. Smith and Anthony Pierce, and Shamia L. Smith, individually, and Anthony Pierce, individually, Plaintiffs
>
> By Their Attorneys,
>
> By: /s/ John W. Kitchens
> John W. Kitchens, MSB #101137
> **KITCHENS LAW FIRM, P.A.**
> Post Office Box 799
> 205 West Railroad Avenue South
> Crystal Springs, Mississippi 39059
> Telephone: 601-892-3067
> Facsimile: 601-892-3057
> Email: jkitchens@kitchenslaw.net
>
> and

> Zev T. Gershon, M.D. J.D. (*pro hac vice to be requested*)
> Wayne M. Willoughby (*pro hac vice to be requested*)
> **GERSHON, WILLOUGHBY & GETZ, LLC**
> 25 Hooks Lane, Suite 304
> Baltimore, Maryland  21208
> Telephone: 443-394-8800
> Facsimile: 443-394-2673
> Email: ztg@AskTheLawDoc.com
> Email: wmw@AskTheLawDoc.com
>
> **Attorneys for Plaintiffs**